United States District Court
Southern District of Texas
**ENTERED**
January 03, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ERNESTO BERLANGA, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:19-cv-166 |
| | § | |
| LORIE DAVIS, | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On August 23, 2019, Petitioner Ernesto Berlanga filed a petition for a writ of habeas corpus by a person in state custody, pursuant to 28 U.S.C. § 2254. Dkt. No. 1.

On December 6, 2019, Respondent Lorie Davis ("the State") timely filed a response to the petition. Dkt. No. 19.

After reviewing the record and the relevant case law, it is recommended that Berlanga's petition be denied. While Berlanga's petition was untimely filed, he is entitled to equitable tolling. His petition, however, fails on the merits, because the state court's decision was not based on an unreasonable application of law or an unreasonable determination of the facts.

## I. Background

### A. Factual Background

On direct appeal, the Thirteenth District Court of Appeals of Texas made specific factual findings. Berlanga v. State, No. 13-14-00717-CR, 2016 WL 3225292 (Tex. App. June 9, 2016). As provided by law, the court sets forth and adopts those findings.[1] Thus, all of the facts, unless otherwise indicated, are quoted from the state Court of Appeals decision, changing only the formatting.

---

[1] Any factual findings made by the state court are "presumed to be correct," unless the petitioner can show "by clear and convincing evidence" that they were incorrect. Norris v. Davis, 826 F.3d 821, 827 (5th Cir. 2016) (citing 28 U.S.C. § 2254(e)(1)). Berlanga has raised no such challenge. Accordingly, the Court adopts the factual findings of the state court.

One of the claims made by Berlanga is the denial of his right to a speedy trial.  The Court adopts the factual findings of the Thirteenth District Court of Appeals of Texas as to the pretrial events.  For ease of reference, those factual findings are quoted in the second section.

### 1. Evidence at Trial

George Roussett, an officer with the Cameron County Sheriff's Department, testified that in the early morning hours of August 4, 2005, he was "flagged down" by Ricardo Alvear in the Cameron Park neighborhood of Cameron County.  Alvear reported that a woman was lying unconscious in a small trailer nearby.  Officer Roussett found the victim, later identified as Patricia Salas—also known as "Larry"—lying on the floor unresponsive and without a pulse with a small puncture wound to her neck.  EMS personnel transported Salas's body to a facility.  Other officers arrived to assist with the investigation.  Officer Roussett spoke to Marcela Martinez, who said that she was walking to Salas's trailer to borrow a television.  As she approached the trailer, she saw two men running from the property.  Martinez saw Salas lying on the floor of the trailer and sought help from Alvear, who then flagged down the officer.  Officer Roussett said that Martinez was "very, very nervous" and was difficult to understand because she has a speech impediment.

Officer Jose Barreda testified that he assisted Officer Roussett in the investigation of Salas's murder.  Officer Barreda was patrolling the neighborhood when he encountered appellant, who appeared to be highly intoxicated, walking in the middle of the street.  Appellant fit the description of one of the men seen running from Salas's trailer.  Officer Barreda took appellant back to the crime scene, where he was identified by Martinez.  Appellant was arrested for public intoxication.   Appellant's shoes and clothing were collected as evidence.

Martinez testified that she had known Salas about a year.  Martinez—who knew Salas as "Patty"—was Salas's neighbor; Martinez lived behind Salas's trailer.  Martinez testified that around six in the evening on the night of the murder, she and her children went to Salas's trailer to watch television.  She and the children fell asleep on the floor at Salas's trailer.  She woke up in the middle of the night because appellant and Salas were

arguing.  When Martinez awoke, appellant, Salas, and another man from the neighborhood, Nieves Salinas, were in the kitchen of the trailer.  Martinez stated that appellant hit Salas on her face, and she fell to the floor.  According to Martinez, after Salas fell, both men left.  However, appellant returned, picked up an ice pick from the kitchen table, and stabbed Salas in the neck.  Martinez stated that when appellant stabbed Salas, Salinas was standing outside the door.  Martinez told Salinas to get appellant out, and both men left.  Martinez sought help, and the officers and EMS personnel arrived.  Martinez stated that the officers brought appellant back to the trailer, and she identified him.  Martinez admitted that when she first gave a statement to the officers, she gave a different story because she was scared.

On cross-examination, Martinez admitted that she gave officers several versions of events.  She first told the officers that she saw two men running from the trailer and did not know who they were.

Nieves Salinas testified that he walked to "Larry's" house around 1:00 a.m. the night of the murder.  Salinas observed appellant following him that evening.  According to Salinas, appellant was "like on drugs or alcohol, very wasted."  Approximately fifteen minutes after Salinas arrived at the trailer, appellant came to the trailer.  Salinas stated that he was drinking a beer at the kitchen table and appellant was talking to Salas in the bedroom.  Salinas heard a woman scream, "Take him, take him."  Salinas stated that he saw Salas on the floor.  He took appellant outside, left him at the corner, and went home.  Salinas testified he did not see appellant hit Salas. Salinas denied that he or Salas used drugs that evening.

On cross-examination, Salinas admitted that in his written statement, he said that he saw appellant and Salas punching each other.  Salinas stated that Salas was on the floor when he got up from the kitchen table.  He and appellant left the trailer.  Shortly after Salinas returned home, the police arrived and took him to the sheriff's office, where he gave a statement.

Carlos Garza, an officer with the Cameron County Sheriff's Office, testified that he investigated Salas's murder.  Garza stated that there was no blood where Salas's body was found.  Lighters and pipes used for smoking crack cocaine were found on the kitchen table.

Garza interviewed appellant at the sheriff's office around 10:00 a.m. the morning following the murder. Garza stated that appellant did not appear to be intoxicated when he was questioned. Appellant had a red area on his forehead when he was interviewed. Appellant's statement was admitted into evidence.

On cross-examination, Garza stated that there was no visible blood at the crime scene, and investigators did not conduct any forensic testing at the scene. Garza admitted that he did not speak to Alvear, the person who flagged down Deputy Roussett; Alvear was reportedly standing in front of Salas's trailer.

Alejandro Madrigal, a forensic DNA analyst with the Department of Public Safety Crime Laboratory in McAllen, Texas, testified that he tested a blood stain found on one of appellant's shoes, but was unable to recover sufficient DNA to obtain a DNA profile. Madrigal stated that he was unable to detect whether the stain was human blood. On cross-examination, Madrigal testified that he also tested appellant's jeans, shirt, socks, and baseball cap. No stains of evidentiary value were found on appellant's clothing. Madrigal stated that he was not asked to test any clothing belonging to Martinez or Salinas.

Victor Alvarado, an investigator with the Cameron County Sheriff's Office, testified that he was dispatched to Salas's trailer around 4:30 a.m. the night of the murder. Alvarado stated that he did not observe any blood or blood spatter in the area where Salas's body was found. Alvarado testified that a thin screwdriver or pick was found a short distance from the trailer; the pick was sent to the crime lab, but no evidence was found on it.

On cross-examination, Alvarado admitted that he did not order any crime lab testing on clothing worn by Martinez or Salinas. Alvarado stated that he tried several times to contact Alvear, who lived next door to Salas, but was never able to contact him.

Appellant declined to testify, but his written statement was admitted into evidence. In his statement, appellant stated that he visited Salas about 1:00 a.m. and that Salinas was there when he arrived. Appellant stated that Salas and Salinas were smoking crack cocaine and were arguing over the cocaine. Appellant stated that Salinas hit Salas and she fell to the floor. After seeing Salas on the floor, appellant left the house. Salinas came running out of the trailer and said in Spanish that Salas had "pissed [him] off." Appellant stated

4

that Salinas left the scene walking fast.  Appellant said that while walking home, he fell and hit his head on the gravel road.  Appellant stated that Salinas and Salas frequently smoked crack cocaine together and frequently argued over drugs.

### 2. Pretrial Proceedings

Appellant was arraigned on November 30, 2005.  The trial court set the case for announcements on January 13, 2006 and for trial on January 17, 2006.  On January 13, 2006, the State requested a continuance.  The State advised the court that it was waiting for some "blood testing and possibly DNA testing" to be completed by the DPS lab in McAllen, Texas.  Appellant's counsel stated he had "no objection" provided that, when the results were completed, he may need time to obtain an expert to evaluate the results. The trial court set the case for announcements and trial on March 20, 2006.  On March 20, 2006, the State advised the trial court that it was still waiting for the DNA results.  Appellant's counsel stated that he was "trying to be cooperative," but asked that the State "light a fire under them and get this in."  Counsel noted that, "[o]ne way or another it will be dispositive of this case."  The trial court set the case for announcements on April 7, 2006 and for trial on April 10, 2006.  On April 7, 2006, the State advised the trial court that it anticipated getting the DNA results "after May 20th."  Defense counsel requested a bond reduction, but the trial court said it would "look at it later."

On June 2, 2006, defense counsel advised the court that there were "some complications with the DNA testing" and that samples had to be resubmitted to the DPS lab.  Defense counsel stated, "[a]nd obviously, we feel that the DNA results would be dispositive or would be helpful to us, so we certainly need it."  Counsel also requested a bond reduction for appellant, which the trial court denied.  The trial court set the case for announcements on August 25, 2006 and for trial on August 28, 2006.

On August 25, 2006, defense counsel informed the court that the parties were still awaiting the DNA results. Defense counsel stated that, "[w]e believe the DNA is necessary on our behalf because we believe it is exculpatory."  The State advised the trial court that it had submitted a new blood sample and that the forensic pathologist would not be available until October 2006.  Pursuant to defense counsel's request, the trial court lowered

appellant's bond from $100,000 to $50,000.  The trial court set the case for announcements and trial on October 30, 2006.  On November 17, 2006, the trial court was advised that the parties had still not received the DNA results.  The trial court reset the case for announcements on February 2, 2007 and for trial on February 5, 2007.

On February 5, 2007, defense counsel urged the trial court "to allow us to go to trial."  Defense counsel stated that appellant had been in custody for 567 days and that the delay was the State's fault because it "had a hard time with the DNA results getting back from the lab."  The State informed the trial court that the DNA results had been returned, but the State was requesting permission to depose the forensic pathologist who had performed the autopsy because she no longer lived in the State.  Defense counsel objected to the State's request to depose the pathologist.  The trial court instructed the State to find out if the pathologist was available the week of March 19, 2007 to testify.  The court reset the case for March 19, 2007, informing the parties to be ready for March 19 because the case had "been hanging around for a long time."  The trial court stated that it did not want to entertain any more motions for a continuance.

On February 8, 2007, the trial court held a hearing on the State's motion to designate a forensic pathology expert.  The State informed the court that the forensic pathologist who performed the autopsy was unavailable for March 19, 2007, and it was requesting to designate another pathologist to testify at trial.  Over defense counsel's objection, the trial court granted the State's motion.  The case remained reset for March 19, 2007.

On March 14, 2007, defense counsel filed a motion in which he requested that the trial court set aside the indictment for failure to provide appellant a speedy trial.  The State filed a written motion for a continuance based on the unavailability of its eyewitness, Martinez.  On March 19, 2007, the trial court held a hearing on the motions.  The State argued that it should be granted a continuance because Martinez was scheduled to give birth by caesarean section and was therefore unavailable the week trial was scheduled. In support of his motion to dismiss on speedy trial grounds, defense counsel noted that appellant had been in custody 593 days.  Counsel further argued that the delays were attributable to the State, and that the State could have engaged the services of a private

laboratory to expedite obtaining the DNA results. Defense counsel also argued that while appellant was incarcerated, he had been involved in several assaults, which resulted in additional charges against him. The trial court denied appellant's motion to dismiss based on speedy trial grounds, but dismissed the case without prejudice because the State was not ready to proceed to trial. The State appealed the trial court's order of dismissal. [The state appellate] Court agreed with the State that the trial court lacked the authority to dismiss the case without the prosecutor's consent. See State v. Berlanga, No. 13–07–226–CR, slip op. at 3 (Tex. App.–Corpus Christi Aug. 13, 2009) (mem. op., not designated for publication). Accordingly, [the appellate court] reversed the trial court's order of dismissal and remanded the case to the trial court for further proceedings. See id. After [the appellate court's] mandate issued on November 20, 2009, the trial court reinstated the case, and on January 29, 2010, reset the case for trial on February 22, 2010.

On February 22, 2010, defense counsel asked the trial court to consider setting a low bond for appellant. The trial court took the request under advisement. On April 22, 2010, defense counsel asked for clarification as to whether the State had received the DNA results. The trial court reset the case for August 16, 2010 for announcements and for trial on August 30, 2010. On August 30, 2010, the trial court was advised that the State was procuring a search warrant to obtain hair samples from appellant for comparison to existing DNA evidence in the case. The parties estimated the process to take about two months. The trial court reset the case for October 28, 2010.

On October 28, 2010, the State announced that it had not received the results on comparing appellant's DNA samples to evidence collected from the crime scene. The trial court reset the case for announcements on December 2, 2010 and trial on December 6, 2010. Defense counsel advised the trial court that the bond company had surrendered appellant's bond and that he was back in custody as of August 2010 [the bond had been posted on March 1, 2010]. The trial court set a hearing for November 2, 2010 for the bond company to show cause as to why the bond had been surrendered.

On November 2, 2010, the trial court held a show cause hearing. Rafael Mata, owner of the bond company, testified that appellant had not been personally calling in every

7

Monday morning, as he had been instructed to do.  Appellant testified that he did call in every Monday.  The trial court reinstated the bond and set a condition that appellant report every Monday in person to Mata.

On December 2, 2010, the State asked for an oral motion for continuance on both cases (the aggravated assault and murder cases) pending against appellant.  Defense counsel stated that appellant was on bond and that he did not "have a problem with" the State's request for a continuance.  The trial court reset both cases for announcements on February 10, 2011 and trial on February 14, 2011.  The trial court stated that "[t]here will be no further continuances" on the cases.

On January 13, 2011, the trial court held a hearing to clarify which case would proceed first, the aggravated assault case or the murder case.  The prosecutor stated that the lab report in the murder case came in "over the holidays," but the State requested to go forward with the aggravated assault case first.  The trial court agreed.

On April 28, 2011, the State requested that the present case be reset for August 2011 because of scheduling conflicts.  Defense counsel stated that August "works for [him]." The case was reset for pretrial matters on August 11, 2011 and for trial on August 22, 2011. On August 18, 2011, the State requested a three-week continuance because it had been unable to locate Martinez, its key eyewitness.  Defense counsel stated he was "adamantly opposed" to a continuance and complained that the State had received numerous continuances as "close to six years have gone by."  The trial court reset the case for September 26, 2011, and noted that if the State was not ready on that date, the court would entertain a motion to dismiss.

On August 25, 2011, defense counsel filed a second motion to set aside the indictment on speedy trial grounds.  In the motion, counsel argued that appellant's defense had been prejudiced because he was unable to locate two witnesses whose testimony was "critical": Jacob Perez, who could have impeached Salinas's testimony, and Ricardo Alvear, who was standing outside Salas's trailer and would have seen persons exiting the trailer.  The trial court heard appellant's motion at the pre-trial hearing on August 29, 2011. The State responded that approximately two and a half years of the delay was attributable

to the State's appeal of the trial court's earlier dismissal of the case. The State further argued that much of the remaining delay was attributable to the failure of the crime lab to timely return the DNA results. The State also argued that appellant had failed to timely assert his right to a speedy trial. The trial court denied appellant's motion on speedy-trial grounds. A jury panel was chosen on August 29, and appellant's trial began the following day, August 30, 2011.[2]

On September 1, 2011, after a three-day jury trial, Berlanga was found guilty of murder. Dkt. No. 16-9, p. 479.[3] He was sentenced to life imprisonment. Id.

**B. State Direct Appeal**

On April 19, 2012, Berlanga filed a notice of direct appeal. Dkt. No. 16-9, p. 490.

On October 18, 2012, the Thirteenth Court of Appeals of Texas dismissed the appeal for want of jurisdiction as being untimely filed. Dkt. No. 16-41, p. 1601. The Texas appellate court noted that Berlanga "may be entitled to an out-of-time appeal by filing a post-conviction writ of habeas corpus returnable to the Texas Court of Criminal Appeals." Id. at 1602.

On January 7, 2013, Berlanga filed an application for writ of habeas corpus with the Texas Court of Criminal Appeals. Dkt. No. 16-52, p. 1740. In that writ, he raised a single claim: that appellate counsel was ineffective for not timely filing a notice of appeal on his behalf. Id., p. 1745. On November 19, 2014, the Court of Criminal Appeals held that Berlanga was "entitled to the opportunity to file an out-of-time appeal." Dkt. No. 16-54, pp. 1836-37.

On August 10, 2015, Berlanga, via appointed counsel, timely filed his brief for his direct appeal. Dkt. No. 16-58, p. 1908. In that brief, Berlanga raised two issues: (1) the evidence was insufficient to sustain his conviction, and (2) he was denied his right to a speedy trial. Id., pp. 1920-30.

---

[2] The direct quotation of facts, taken from the Thirteenth District Court of Appeals, ends here.
[3] The page number refers to the Bates-stamped page number on the bottom of each page of the record.

On June 9, 2016, the Thirteenth Court of Appeals issued its decision, affirming Berlanga's conviction. Berlanga v. State, No. 13-14-00717-CR, 2016 WL 3225292 (Tex. App. June 9, 2016).  As to the sufficiency of the evidence, the appellate court found that while some witnesses gave conflicting statements, "reasonable jurors could have found appellant guilty of murder beyond a reasonable doubt." Berlanga at *4.  As to the speedy trial, the appellate court found that Berlanga had acquiesced to the delay attributable to the DNA testing and that "some of the delay was justified by valid reasons, such as the time the case was on appeal and the unavailability of a witness." Berlanga at *11.  The appellate court found that Berlanga's speedy trial rights were not violated. Id.

On July 8, 2016, Berlanga filed a petition for discretionary review with the Texas Court of Criminal Appeals. Dkt. No. 19-63, p. 2001.  In that petition, he, again, raised claims regarding the sufficiency of the evidence and his speedy trial rights. Id.   On December 7, 2016, the Court of Criminal Appeals "refused" the petition. Dkt. No. 16-67, p. 2061.

### C. State Habeas Proceedings

On December 28, 2017, Berlanga filed an application for writ of habeas corpus in the Court of Criminal Appeals. Dkt. No. 18-1, p. 2349.  In that application, he made seven claims, which the Court restates as follows: (1) his trial counsel had a conflict of interest because he had previously represented Berlanga on unrelated charges and their "antagonistic" relationship poisoned their relationship in the instant case; (2) trial counsel was ineffective for failing to fully investigate and litigate the case; (3) ineffective assistance of appellate counsel; (4) violation of his speedy trial rights; (5) a senior judge who issued a bench warrant for Berlanga's arrest was not constitutionally or statutorily qualified to act in the case. Id., pp. 2350-2367.

On February 28, 2018, the Court of Criminal Appeals remanded the case to the trial court for an evidentiary hearing. Dkt. No. 16-76, p. 2196.

On November 7, 2018, the 107th District Court — after holding the evidentiary hearing — issued a recommendation, finding that all of Berlanga's claims were meritless. Dkt. No. 16-85, pp. 2336-2341.

On March 20, 2019, the Court of Criminal Appeals denied Berlanga's application "without written order on [the] findings of [the] trial court." Dkt. No. 16-86, p. 2345. The denial indicated that the Court of Criminal Appeals rejected the petition on substantive grounds, rather than on procedural grounds. Ex parte Torres, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (en banc) (indicating that a "denial" signifies adjudication on the merits, while "dismissal" reflects a claim declined on grounds other than upon the merits).

### D. Federal Habeas Proceedings

On August 5, 2019, Berlanga filed his petition in the instant case. Dkt. No. 1. Berlanga raises four claims: (1) his trial counsel had a conflict of interest; (2) he was denied his right to a speedy trial; (3) trial counsel was ineffective for failing to call witnesses and investigate the facts of the case; (4) there was insufficient evidence to convict him. Id. The case was originally filed in the Houston Division; on August 27, 2019, it was transferred to this Court. Dkt. No. 5.

On August 28, 2019, the State was ordered to respond to the petition. Dkt. No. 7.

On December 6, 2019, the State timely filed a response to the petition, arguing that Berlanga's petition was not timely filed and cannot be saved by equitable tolling. Dkt. No. 19. Berlanga did not file a reply.

## II. Applicable Law

### A. Section 2254

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prisoner convicted in a state court may challenge his conviction to the extent it violates "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Accordingly, only violations of the United States Constitution or federal law are subject to review by this Court under § 2254.

In conducting such a review, a federal district court:

may not issue a writ of habeas corpus for a defendant convicted under a state judgment unless the adjudication of the claim by the state court "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State Court proceeding."

Riddle v. Cockrell, 288 F.3d 713, 716 (5th Cir. 2002) (quoting 28 U.S.C. § 2254(d)(1)-(2)).

"A decision is contrary to clearly established federal law under § 2254(d)(1) if the state court (1) 'arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law'; or (2) 'confronts facts that are materially indistinguishable from a relevant Supreme Court precedent' and reaches an opposite result.'" Simmons v. Epps, 654 F.3d 526, 534 (5th Cir. 2011) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)). "[A]n unreasonable application of federal law is different from an incorrect application of federal law." Harrington v. Richter, 562 U.S. 86, 101 (2011).

"The state court makes an unreasonable application of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts'; or (2) 'either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" Simmons, at 534 (quoting Williams, at 407).

Additionally, the AEDPA requires that federal law be "clearly established" "as articulated by the Supreme Court." Woodfox v. Cain, 609 F.3d 774, 800 n. 14 (5th Cir. 2010). "[A] decision by . . . [the Fifth Circuit] . . . or one of our sister circuits, even if compelling and well-reasoned, cannot satisfy the clearly established federal law requirement under § 2254(d)(1)." Salazar v. Dretke, 419 U.S. 384, 399 (5th Cir. 2005).

"Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Harrington, 562 U.S. at 102–03 (2011) (internal quotation marks omitted).

**B. Timeliness**

A petitioner has a one year "period of limitation" in which to file a § 2254 petition. 28 U.S.C. § 2244(d)(1). That period runs from the latest of:

    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

8 U.S.C. § 2244(d)(1)(A)-(D).

This one-year period is tolled during the time in which "a properly filed application for State post-conviction or other collateral review" is pending in the state courts. 28 U.S.C. § 2244(d)(2).

Further, the limitations period is not jurisdictional and may be equitably tolled. Holland v. Florida, 560 U.S. 631, 645 (2010).  For equitable tolling to excuse the late filing of a petition, the petitioner must show that he has been "pursuing his rights diligently" and that "some extraordinary circumstance" prevented timely filing. Id. at 649.

**III. Analysis**

In analyzing the claims raised by Berlanga, a basic premise is that allegations by pro se litigants must be afforded liberal construction to ensure that their claims are not unfairly dismissed, because of their unfamiliarity with the law. Haines v. Kerner, 404 U.S. 519, 520 (1972).  That latitude, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981).  In this case, even allowing for the latitude due a pro se, this petition is meritless and should be denied.

    **A. Timeliness**

Berlanga had one year in which to file his § 2254 petition in this Court.  As relevant here, Berlanga had one year from "the date on which the judgment became final by the

conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

Berlanga was granted an out-of-time direct appeal as part of a state habeas proceeding. Dkt. No. 16-54, pp. 1836-37. When the state court grants "a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief," it resets the deadline for filing a federal habeas petition. Jimenez v. Quarterman, 555 U.S. 113, 121 (2009). Thus, the deadline proceeds from the date that the out-of-time appellate process was concluded. Id.

On December 7, 2016, the Court of Criminal Appeals "refused" the petition for discretionary review on direct appeal. Dkt. No. 16-67, p. 2061. Berlanga did not file a petition for writ of certiorari with the Supreme Court. Thus, his conviction became final on March 7, 2017, "when he failed to file a petition for writ of certiorari within ninety days" of the Court of Criminal Appeals refusing the petition. Ford v. Davis, 910 F.3d 232, 235 (5th Cir. 2018) (citing SUP. CT. R. 13.1 and Flanagan v. Johnson, 154 F.3d 196, 197 (5th Cir. 1998)).

By the plain language of § 2244(d)(1)(A), Berlanga had until March 7, 2018, to file a habeas petition in Federal court.

The one-year period is tolled during the time in which "a properly filed application for State post-conviction or other collateral review" is pending in the state courts. 28 U.S.C. § 2244(d)(2). As recounted in the factual background, Berlanga's state habeas petition was filed on December 28, 2017. Dkt. No. 18-1, p. 2349. On March 20, 2019, the Court of Criminal Appeals denied Berlanga's application "without written order on [the] findings of [the] trial court." Dkt. No. 16-86, p. 2345. Thus, Berlanga's state habeas petition was pending for 447 days.

Accordingly, the one-year statute of limitations was tolled for those 447 days, during which the Texas courts considered the petition. By tolling the statute of limitations for 447 days, Berlanga's new deadline would have been May 28, 2019. No federal petition was filed before that deadline. In fact, the federal petition was not filed until August 5,

2019, just over two months later.  Accordingly, the petition was untimely filed.  That conclusion requires the Court to consider whether equitable tolling is appropriate.

To avail himself of equitable tolling, Berlanga must establish "extraordinary circumstances" that warrant the tolling of the limitations period. Holland, 530 U.S. at 649. Berlanga bears the burden of establishing that equitable tolling is appropriate. Phillips v. Donnelly, 216 F.3d 508, 511 (5th Cir. 2000).

To merit equitable tolling, "[a] petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify." In re Wilson, 442 F.3d 872, 875 (5th Cir. 2006).  Berlanga asserts that his appellate counsel did not notify him of the Court of Criminal Appeals' decision to refuse his petition for discretionary relief, Dkt. No. 1, p. 9, and that he did not learn of the denial until he inquired about the status of the denial.  See, Berlanga v. State, Case No. PD-0770-16 (indicating the notice was sent solely to Berlanga's counsel).

Berlanga asserts that on November 15, 2017, he wrote to the Court of Criminal Appeals seeking an update on the status of his petition; he has attached a copy of the letter as an exhibit. Dkt. No. 3-1, p. 4.  On December 4, 2017, Berlanga received a letter from the Court of Criminal Appeals advising him that the petition had been denied on December 7, 2016. Dkt. No. 3-1, p. 6.  If Berlanga were to be afforded equitable tolling for the period, between when his conviction became final and when he was informed of the denial of his petition, his deadline would be tolled for an additional 272 days, making the instant petition timely filed.

The Fifth Circuit has stated that lengthy delays "in receiving notice of state court action may warrant equitable tolling." Hardy v. Quarterman, 577 F.3d 596, 598 (5th Cir. 2009).  This does not, however, absolve Berlanga of his duty to act with "diligence and alacrity" in pursuing habeas relief. Id. (quoting Phillips v. Donnelly, 216 F.3d 508, 511 (5th Cir. 2000).  The key consideration is whether the petitioner acted with diligence both before and after receiving the belated notification. Id.

For the reasons set forth below, the Court concludes that Berlanga acted with the necessary diligence prior to receiving the belated notification that his petition had been

denied.  The petition for discretionary review was filed on July 8, 2016. Dkt. No. 19-63, p. 2001.  On November 15, 2017, Berlanga wrote seeking an update on his petition. Dkt. No. 3-1, p. 5.  Thus, according to Berlanga, 16 months elapsed before he sought an update.

The Fifth Circuit has warned that equitable tolling does not turn on bright-line rules about how long to wait. See Jackson v. Davis, 933 F.3d 408, 413 (5th Cir. 2019) (noting that there is no "temporal cut-off for diligence").  At the same time, the Fifth Circuit has found that a petitioner who waited 15 months before inquiring about the status of his case was nevertheless diligent in pursuing his claim. Id.  Given that Berlanga would have reasonably assumed that counsel would immediately inform him of the denial of the petition, he exercised diligence by seeking information after waiting 15 months. Id.  The Court of Criminal Appeals docket reflects that notice of the refusal was sent solely to Berlanga's appellate counsel and was not sent directly to Berlanga. Berlanga v. State, Case No. PD-0770-16.  Thus, affording Berlanga the benefit of the doubt, the Court believes that Berlanga exercised diligence before receiving the belated notification.

The question of whether Berlanga also exercised diligence after receiving the belated notification is a bit more complicated.  He received the notification on December 4, 2017. Dkt. No. 3-1, p. 6.  He filed his state habeas petition on December 28, 2017, just 24 days later. Dkt. No. 18-1, p. 2369.  While this action shows definite diligence, it is less clear whether he diligently sought federal relief.  His state habeas petition was denied on March 20, 2019. Dkt. No. 16-86, p. 2345.  He filed his federal habeas petition on August 5, 2019, just over five months later. Dkt. No. 1.

Had Berlanga diligently filed his petition prior to May 28, 2019 — the filing deadline — then there would be no need to consider whether equitable tolling was appropriate.  There is no indication that the delay in receiving notification of the denial of the petition for discretionary review on direct appeal contributed to Berlanga waiting five months to file his federal habeas petition. Clarke v. Rader, 721 F.3d 339, 345 (5th Cir. 2013).

However, if the Court were to equitably toll the statute of limitations until "he first received notice" of the state court decision — December 4, 2017 — then his petition would

be timely. <u>Williams v. Thaler</u>, 400 Fed. App'x 886, 893 (5th Cir. 2010) (equitably tolling an untimely filed petition from the date that the petitioner first received notice of the state court decision). In that scenario, Berlanga's conviction would have become final 90 days later — March 5, 2018 — when the period for filing a <u>petition for certiorari</u> would have expired. <u>Ford</u>, 910 F.3d at 235. Thus, he would have had until March 5, 2019, to timely file his petition. That deadline would, in turn, have been stayed for 447 days during the pendency of the state habeas proceedings. § 2244(d)(2). With those additional 447 days factored in, Berlanga's revised deadline would be May 25, 2020. Under that standard, Berlanga's petition was clearly timely filed. <u>See</u> <u>Williams</u>, 400 Fed. App'x at 893 (noting that when the deadline was equitably tolled from the date that notice was given, the petition was timely filed).

Under the circumstances present here, the Court believes that Berlanga is entitled to equitable tolling, making his petition timely filed. As noted earlier, even with the benefit of equitable tolling, his petition is still meritless, <u>i.e.</u> the result insofar as relief is the same.

## B. Conflict of Interest

Berlanga asserts that there was a conflict of interest between himself and his trial counsel. Under the theory proffered by Berlanga, this claim is meritless.

The crux of Berlanga's claim was that his appointed trial counsel had represented him on several cases preceding this murder case and that counsel had given him "bad legal advice." Dkt. No. 2, p. 1. In one case, counsel had advised Berlanga to plead guilty, he refused, and the case was eventually dismissed. In another case, counsel had advised Berlanga to enter into a plea agreement for an eight-year prison term, Berlanga refused, entered into a cold plea and was only sentenced to two years. Berlanga argues that "no rational lay person would place their life in the hands of an attorney who constantly keeps giving the wrong legal advice over and over and over." Dkt. No. 2, p. 5.

While Berlanga describes this as a conflict of interest, that is not the case. A conflict of interest occurs when the lawyer must "choose between the interest of multiple clients" or otherwise be compelled "to compromise his duty of loyalty." <u>Bostick v. Quarterman</u>, 580 F.3d 303, 307 (5th Cir. 2009) (quoting <u>U.S. v. Culverhouse</u>, 507 F.3d 888, 892 (5th

Cir. 2007)).  Neither of those situations were present in this case.  Rather, Berlanga is complaining that he was unable to trust his lawyer based upon prior experiences.  A defendant is not entitled to a "meaningful relationship" with his attorney.  <u>Crawford v. Epps</u>, 353 F. App'x 977, 990 (5th Cir. 2009) (quoting <u>Morris v. Slappy</u>, 461 U.S. 1, 14 (1983)).  The state court did not unreasonably apply federal law or use an unreasonable determination of the facts in rejecting this claim. § 2254(d)(1)-(2).  Accordingly, Berlanga is not entitled to relief.

### C. Speedy Trial

Berlanga asserts that he was denied his right to a speedy trial.  Given the years over which this case spanned, the argument has an inherent appeal.  Nevertheless "[b]ecause AEDPA limits our review to the reasonableness rather than the correctness of the state court's decision, we need not and do not decide today the result we would reach if this case had come before us on direct appeal." <u>Goodrum</u>, 547 F.3d at 266.

The right to a speedy trial is judged by the four-factor balancing test laid in <u>Barker v. Wingo</u>, 407 U.S. 514 (1972).  The four <u>Barker</u> factors are: "(1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to speedy trial, and (4) prejudice to the defendant." <u>Goodrum v. Quarterman</u>, 547 F.3d 249, 257 (5th Cir. 2008).  The focus is not on whether the Texas court correctly applied the <u>Barker</u> factors, but whether it reasonably applied those factors. <u>Id</u>.

In applying these factors, the Court of Appeals first found that the six-year delay, between arrest and the start of the trial, was presumptively prejudicial and weighted "heavily against the State." <u>Berlanga</u>, 2016 WL 3225292, at *6.

As to the second factor — the reason for the delay — the Court of Appeals found that more than two and a half years was "attributable to the State's appeal of the dismissal of the case, and is a valid reason that justifies delay." <u>Id</u>., at *8 (citing <u>U.S. v. Loud Hawk</u>, 474 U.S. 302, 315 (1986)).  In <u>Loud Hawk</u>, the Supreme Court held that "an interlocutory appeal by the Government ordinarily is a valid reason that justifies delay."  The Court of Appeals, in this case, found that about three years of the delay was attributable to the delay in testing the DNA evidence.  While "a reasonable period of time in which to develop its

case is not held against the State," the appellate court found that most of the delay was unreasonable. <u>Berlanga</u>, at *8. The Texas appellate court concluded "that the lengthy delay attributable to waiting for the DNA test results weighs against the State, but not heavily." <u>Id</u>., at *9.

As to the third factor — the defendant's assertion of his right to a speedy trial — the state court believed it weighed heavily against Berlanga. The Texas court found that Berlanga waited eighteen months before invoking his speedy trial rights. More importantly, Berlanga never filed a motion for a speedy trial, but rather sought to have the case dismissed on speedy trial grounds. "Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one." <u>Cantu v. State</u>, 253 S.W.3d 273, 283 (Tex. Crim. App. 2008); <u>see also</u> <u>U.S. v. Frye</u>, 489 F.3d 201, 212 (5th Cir. 2007) ("A motion for dismissal is not evidence that the defendant wants to be tried promptly.").

Regarding the fourth factor — prejudice to the defendant — the Court of Appeals found that the prejudice was minimized because Berlanga acquiesced in the delay. As previously noted, the Texas court found that approximately three years of the delay was because of the DNA testing. Defense counsel did not object to several of the delays in waiting for the DNA test results because he believed they would be exculpatory. <u>Berlanga</u>, at *10. The State can overcome any presumption of prejudice if it is shown that the defendant acquiesced to the delay. <u>Doggett v. U.S.</u>, 505 U.S. 647, 658 (1992)). Accordingly, the Texas court found that the acquiescence "weighs against the conclusion that appellant's right to a speedy trial was violated." <u>Berlanga</u>, at *10.

The Court of Appeals concluded that "the weight of the four factors, when balanced together, militates against finding a violation of appellant's right to a speedy trial." <u>Berlanga</u>, at *11.

The Court notes that the <u>Barker</u> factors "have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." <u>Barker</u>, 407 U.S. at 533. In view of the fact that the <u>Barker</u> test is not a bright-line test, but rather a balancing process, the state court decision was "was neither contrary to nor involved an unreasonable

application of clearly established federal law." <u>Amos v. Thornton</u>, 646 F.3d 199, 209 (5th Cir. 2011) (rejecting speedy trial claim in § 2254 proceeding).  At each stage, the Texas appellate court correctly applied the facts to the prevailing Supreme Court case law. Having analyzed each factor, the Texas court ultimately found that the balancing test weighed in the Government's favor.  "[F]airminded jurists could easily conclude that [Berlanga] did not suffer a violation of his Sixth Amendment right to a speedy trial." <u>Amos</u>, 646 F.3d at 209.  The state court did not unreasonably apply federal law or make an unreasonable determination of the facts.  Accordingly, this claim should be denied.

### D. Ineffective Assistance of Counsel

Berlanga raises three claims of ineffective assistance: (1) that counsel failed to call potential witnesses; (2) counsel failed to fully investigate his case; and (3) that counsel failed to seek discovery. Dkt. No. 2, p. 11.  Each of these claims is meritless.

#### 1.  Failure to Call Witnesses

First, Berlanga asserts that counsel failed to call Ricardo Alvear, Antonio Cardenas and Rudolfo Ruiz, all of whom were present at or near the crime scene. Dkt. No. 2, p. 11. "[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." <u>Day v. Quarterman</u>, 566 F.3d 527, 538 (5th Cir. 2009).  Berlanga has not shown that any of those witnesses were available to testify or how their testimony would have been favorable to his defense. Accordingly, this claim should be denied as conclusory and meritless.

#### 2.  Failure to Investigate

Second, Berlanga's claims that counsel failed to investigate his case, which amounted to ineffective assistance.  This claim should be denied as meritless.

Lieutenant Carlos Garza testified that his computer which had his investigative notes "crashed" and he was unable to retrieve them. Dkt. No. 16-35, p. 1122.  Berlanga faults his counsel for not obtaining these notes or investigating whether Marcela Martinez was incompetent to testify on behalf of the State.  His claim as to Martinez's competency

20

was premised largely on her nickname, "La Loca," which the state court translated as "the crazy one." Dkt. No. 16-85, p. 2338.

In order to prevail on a claim of failure to investigate, Berlanga "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." Druery v. Thaler, 647 F.3d 535, 541 (5th Cir. 2011). Berlanga makes no such showing, instead arguing that the mere fact that counsel "failed to fully investigate is sufficient to show how appellant was deprived of a fair and impartial trial." Dkt. No. 2, p. 11. This claim is conclusory, unsupported, and should be denied.

### 3.   Failure to Seek Discovery

Finally, as to the claim of ineffective assistance, Berlanga argues that counsel failed to seek discovery of the 911 calls. Dkt. No. 2, p. 12. Berlanga has not alleged what information was contained in those calls which would have altered the outcome of the case. Druery, 647 F.3d at 541. This claim is also conclusory, unsupported by facts, and should be denied.

### E. Sufficiency of the Evidence

Berlanga asserts that the evidence was not sufficient to constitutionally secure his conviction. As with the others, this claim is meritless and should be denied.

For a § 2254 petitioner to prevail on a claim of the sufficiency of the evidence, he "is entitled to relief if no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Hebert v. Rogers, 890 F.3d 213, 224 (5th Cir. 2018) (citing Jackson v. Virginia, 443 U.S. 307, 324 (1979)). In making this determination, "the credibility of the witnesses and the weight of the evidence is the exclusive province of the jury." Herbert, 890 F.3d at 225 (quoting U.S. v. Garcia, 995 F.2d 556, 561 (5th Cir. 1993)).

Martinez was the primary witness against Berlanga; she was the only witness who claimed to have personally watched the murder occur. As the Court of Appeals acknowledged, "Martinez gave several inconsistent statements prior to trial," claiming she initially lied to the police "because she was scared." Berlanga, at *4. Furthermore, the Texas court also acknowledged "that there was no physical evidence linking [Berlanga] to the murder." Id.

Nevertheless, the jury was entitled to find Martinez's trial testimony credible and find that the circumstantial evidence pointed to Berlanga's guilt. That is the purpose of a finder of fact. See, e.g., Miller v. Butcher Distributors, 89 F.3d 265, 268 (5th Cir. 1996) ("It is the function of the jury as the traditional finder of facts, and not the court, to weigh conflicting evidence and inferences, and to determine the credibility of witnesses.").

The Texas court held that "reasonable jurors could have found appellant guilty of murder beyond a reasonable doubt, and that the evidence is therefore sufficient to support appellant's conviction." Berlanga, at *4. That conclusion "was neither contrary to nor involved an unreasonable application of clearly established federal law." Amos, 646 F.3d at 209.

## IV. Recommendation

It is recommended that Ernesto Berlanga's petition for writ of habeas corpus by a person in state custody, pursuant to 28 U.S.C. § 2254, be denied.

### A. Certificate of Appealability

Unless a circuit justice or judge issues a Certificate of Appealability ("COA"), a petitioner may not appeal the denial of a § 2254 motion to the Court of Appeals. 28 U.S.C. § 2253(c)(1)(A). A petitioner may receive a COA only if he makes a "substantial showing of the denial of a constitutional right." § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). To satisfy this standard, a petitioner must demonstrate that jurists of reason could disagree with the court's resolution of his constitutional claims or that jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further. Id. at 327; Moreno v. Dretke, 450 F.3d 158, 163 (5th Cir. 2006). "Importantly, in determining this issue, we view the petitioner's arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)." Druery v. Thaler, 647 F.3d 535, 538 (5th Cir. 2011) (internal quotations omitted) (citing Barrientes v. Johnson, 221 F.3d 741, 772 (5th Cir. 2000)). The district court must rule upon a certificate of appealability when it "enters a final order adverse to the applicant." Rule 11, Rules Governing § 2254 Petitions.

After reviewing Berlanga's § 2254 motion and the applicable Fifth Circuit precedent, the Court is confident that no outstanding issue would be debatable among

jurists of reason.  Although Berlanga's § 2254 motion raises issues that the Court has carefully considered, he fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  Accordingly, it is **RECOMMENDED** that a COA should be denied.

### B. Notice to Parties

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1).  A party filing objections must specifically identify the factual or legal findings to which objections are being made.  The District Judge is not required to consider frivolous, conclusive, or general objections. Battle v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a de novo review of the record before adopting those findings.  If the District Judge chooses to adopt such findings without conducting a de novo review of the record, the parties may not attack those findings on appeal, except upon grounds of plain error. Alexander v. Verizon Wireless Servs., L.L.C., 875 F.3d 243, 248 (5th Cir. 2017).

DONE at Brownsville, Texas, on January 3, 2020.

_____
Ronald G. Morgan
United States Magistrate Judge